UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRAD TOPP, )
)
       Petitioner, )
)
v. ) Case No. 1:17-cv-0744-JMS-DML
)
SUPERINTENDENT, )
)
       Respondent. )

**Entry Denying Petition for Writ of Habeas Corpus**

The petition of Brad Topp for a writ of habeas corpus challenges a prison disciplinary proceeding in MCF 16-09-0308. For the reasons explained in this entry, Mr. Topp's habeas petition must be **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000). A violation of state law will not support the issuance of a writ of habeas corpus. *Holman v. Gilmore*, 126 F.3d 876, 884 (7th Cir. 1997).

## B. The Disciplinary Proceeding

On September 17, 2016, Sgt. James Strong wrote a Report of Conduct charging Mr. Topp with refusing to submit to urinalysis testing. The conduct report states:

> On 7-17-2015[1] at approx. 11:50 PM I Sgt. James Strong was conducting a urinalysis test for Ofd. Topp, Brad #129104 of KHU 343 for the purpose of a follow up urinalysis screening. When offender Topp handed me his sample I noticed it appeared to be clear like water and had no temperature on temperature strip. I then tilted the bottle to allow the urine to heat up the temperature strip which it never did. I advised offender Topp that the sample was not acceptable since it was colder than 90 degrees. Offender Topp was given a total of 2 hours and at 2:00 a.m. he failed to provide a valid sample. He was advised he would receive a conduct report after signing a refusal to submit to urinalysis test.

Dkt. 6-1; dkt. 6-2.

Mr. Topp signed a refusal to submit to a urinalysis test form. Dkt. 6-2. On October 4, 2016, Mr. Topp was notified of the charge and was given a copy of the conduct report and the Notice of Disciplinary Hearing "Screening Report." He was notified of his rights and pled not guilty. He requested a lay advocate and requested that inmate Jeremy Miller, #257252, and inmate Carl Brown, #933649, be called as witnesses. Inmate Miller provided the following statement: "The specimen cups were not in any packaging and also my urinalysis read the correct temp of 92 or above the same day as his." Dkt. 6-7. Inmate Brown provided the following statement: "We were standing @ desk together, and both of our I cups were having issues registering. We voiced our concern, because I cups were already taken out of foil pouch (out of our presence). The Sergeant stated 'we know how to do our job.' The cups did after a short time register. Mr. Topp was 92 temperature. Mine was 92 temperature. Sergeant Fisher deemed mine fine. I was negative. The Sergeant performing Mr. Topp's [illegible] his a refusal due to temperature." Dkt. 6-8. Mr. Topp

---

[1] This date appears to be an error as the date of incident on the report of conduct was September 17, 2016.

requested video of the Phase 2 visiting room as evidence. He stated he believed the video would show that the cups and test strips were already open and that is against policy. Dkt. 6-3.

The hearing officer conducted a disciplinary hearing on October 24, 2016. Mr. Topp pleaded not guilty and stated, "Cups was out of package before I entered visit two. I waited in line for 5 minutes waiting to give my cup to Sgt. Strong after Sgt. Rish watched me urinate." Dkt. 6-5. The hearing officer found Mr. Topp guilty of refusing to submit to urinalysis testing. Dkt. 6-5. In making this determination, the hearing officer considered the staff reports, the offender's statement, witness evidence, and the video.[2] The following evidence from the video summary was provided:

> On 10/13/2016 (J. Prater) reviewed the DVR of Phase 2 Visitation Room dated 9/17/2016 and the approx. time of 1:09am.[3] This review was requested by offender Topp, Brad 129104 at his screening on 10/04/2016 for case MCF 16-09-0308.
> During review of the DVR offender Topp 129104 can be seen sitting in the Phase 2 Visitation Room waiting to give a urine sample. At 1:10am he is seen going toward the bathroom followed by Sgt. and then returning at 1:12am with the urine sample which he places on the table in front of Sgt. Strong.
> Due to the position of the camera it is not clear what other items are sitting in the table where the sample was sit [sic] down by Topp.

Dkt. 6-6.

Based on the hearing officer's recommendations the following sanctions were imposed: a written reprimand, 90-days idle-no-pay status, 30-day loss of commissary and telephone privileges, an earned credit time deprivation of 30 days, and a demotion from credit class 2 to

---

[2] In the report of disciplinary hearing, the hearing officer checked the box that she considered photos as evidence in finding Mr. Topp guilty. She submitted an affidavit stating this was an error because there were no photos. Instead, she intended to state that she also considered video evidence. Dkt. 6-13.

[3] The video evidence that the hearing officer reviewed was of Mr. Topp's second attempt to provide a urine sample. The first sample that was provided at 11:50 pm was not captured on video. Dkt. 6, p. 8.

credit class 3. The hearing officer recommended the sanctions because of seriousness of the offense and the frequency of the offense. Dkt. 6-5.

Mr. Topp exhausted his administrative appeals. He now seeks relief pursuant to 28 U.S.C. § 2254 arguing that his due process rights were violated.

## C. Analysis

Mr. Topp asserts the following claims: 1) his due process rights were violated because the hearing officer did not review the video from each camera angle in the Phase 2 visiting room; 2) the urinalysis cups were removed from their packaging in violation of Indiana Department of Correction ("IDOC") policy; and 3) the information in the conduct report was fraudulent and retaliatory.

First, Mr. Topp argues that his due process rights were violated because the hearing officer did not review the video evidence from each of the camera angles in the Phase 2 Visitation Room. However, whether the hearing officer viewed the video evidence from each camera angle in the Phase 2 Visitation Room is irrelevant to the charge of refusing to submit to urinalysis testing, which is the charge Mr. Topp received. After providing a sample at approximately 11:50 pm that was not acceptable, Mr. Topp attempted to provide a second sample. He was given two hours to provide a second sample and by 2:00 a.m. he failed to provide a valid sample. He signed a refusal to submit to urinalysis test acknowledging he would receive a conduct report. Mr. Topp received a conduct report for refusing to submit to a urinalysis test.

Because Mr. Topp's due process claim – that the hearing officer did not view all camera angles – is not connected to the conduct that forms the basis of the conduct report – refusal to provide a valid urine sample – Mr. Topp's due process rights were not violated and he is not entitled to relief.

Second, Mr. Topp argues the urinalysis cups were removed from their packaging in violation of IDOC policy. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). The process due here is measured by the Due Process Clause of the United States Constitution, not the internal policies of the prison. *See Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution."),

The claim that prison authorities failed to follow various policies before and during the challenged disciplinary proceeding are summarily dismissed as insufficient to support the relief sought by the petitioner. *See Keller v. Donahue,* 2008 WL 822255, 271 Fed.Appx. 531, 532 (7th Cir. Mar. 27, 2008) (in a habeas action, an inmate "has no cognizable claim arising from the prison's application of its regulations."); *Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D.Ind. 1997) (violations of the Indiana Adult Disciplinary Policy Procedures do not state a claim for federal habeas relief). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). For these reasons, Mr. Topp's claim that IDOC policy was violated is without merit.

Finally, Mr. Topp alleges that the information in the conduct report is fraudulent and retaliatory. The Court interprets this claim as a challenge to the sufficiency of the evidence. In reviewing the sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see also Meeks v.*

*McBride,* 81 F.3d 717, 720 (7th Cir. 1996) ("because the 'some evidence' standard . . . does not permit courts to consider the relative weight of the evidence presented to the disciplinary board, it is '[g]enerally immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied' in support of its conclusion")(*quoting Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir. 1989)). Instead, the "some evidence" standard of *Hill* is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson,* 188 F.3d at 786. The evidence here was constitutionally sufficient. *See Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir. 1993) (a federal habeas court "will overturn the [hearing officer's] decision only if no reasonable adjudicator could have found [the petitioner] guilty of the offense on the basis of the evidence presented.").

The evidence relied on by the hearing officer included staff reports. A conduct report alone can establish "some evidence" sufficient to support the disciplinary conviction. *McPherson,* 188 F.3d at 786. Here, the conduct report shows that Mr. Topp failed to provide a valid urine sample for testing. Attached as an exhibit to the conduct report is a refusal to submit to a urinalysis test form signed by Mr. Topp acknowledging that he refused to submit to urinalysis testing and would receive a conduct report for the refusal. This evidence is sufficient to support the guilty finding. Mr. Topp is not entitled to relief.

### D. Conclusion

The right to due process in this setting is important and is well-defined. Due process requires the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the

disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Hill,* 472 U.S. at 454; *Wolff,* 418 U.S. at 564, 566, 570-71 (1974).

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Topp's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/21/2017

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

BRAD TOPP
129104
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov